UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AARON STEWART,

    Plaintiff,

v.

EXTRA SPACE STORAGE, et al.,

    Defendants.

CASE NO. C23-5786 BHS

ORDER

This matter is before the Court on Defendant Extra Space Storage's motion for summary judgment on Plaintiff Aaron Stewart's breach of contract claim. Dkt. 27. Because Plaintiff Aaron Stewart fails to establish a genuine issue on this claim, the motion is granted and the claim is dismissed with prejudice.

## I. BACKGROUND

On December 12, 2019, Stewart entered into an agreement with Extra Space to rent a storage unit. Dkt. 27-2, ¶ 3; Dkt. 27-2 at 4–5. When Stewart executed this agreement, he declared the value of his personal property to be stored at the unit to be $2,000 and agreed that the value of the stored property would not exceed $5,000. *Id.* at 5, 7. However, unbeknown to Extra Space, Stewart did not store merely $2,000 worth of

ORDER - 1

personal property in the storage unit. He instead stored what he claims to be roughly $2.75 million worth of hemp. *See* Dkt. 41, ¶ 10.

Stewart testified that he harvested this hemp pursuant to a license that he obtained from the Washington State Department of Agriculture.[1] Dkt 29-1, ¶¶ 2. He asserts that "[t]he hemp [he] grew was of high quality" and "that the material [he] harvested was hemp, not marijuana, because of its low Delta-9 THC content." *Id.* ¶ 3. Stewart stored 1,378 pounds of hemp in his unit "in one hundred-six (106) twenty-seven (27) gallon heavy-duty plastic Commander totes." *Id.* ¶ 4.

The final rental payment that Stewart made for the storage unit was on January 12, 2021. Dkt. 27-2, ¶ 4. Thereafter, he failed to make his rental payments due on February 12, March 12, and April 12. *Id.* Stewart claims that his failure to pay rent on these dates was "due to a credit card expiring." Dkt. 29-1, ¶ 6.

Extra Space asserts that it mailed Stewart a preliminary lien notice on February 27, 2021, and a final notice of lien sale on March 21, 2021. Dkt. 27-2 at 2, 15, 17. The final notice of lien sale stated that any property in Stewart's storage unit would be advertised for sale and sold at a public auction on April 20, 2021, unless Stewart satisfied the lien amount within 14 days of the date of the notice. *Id.* at 17. Stewart claims that he never received either of these notices. Dkt. 29-1, ¶¶ 7, 8.

On April 14, 2021, two Extra Space employees entered the storage unit and discovered "106 yellow/black plastic bins, or 27 gallons, full of what [they] suspected to

---

[1] RCW 15.140.060 authorizes the Department of Agriculture to issue hemp producer licenses to qualified applicants.

ORDER - 2

be marijuana." Dkt. 27-1, ¶ 3. These employees reported the suspected marijuana to the Tacoma Police Department, and "[t]he police came and confiscated the suspected marijuana." *Id.*

On April 20, 2021, Jennifer Jordan, who was Stewart's executive assistant for his "property management company and his hemp growing business," telephoned the Tacoma Police Department on Stewart's behalf. Dkt. 29-2, ¶¶ 2, 7. Jordan spoke to a detective "assigned to the case" and informed him that "the material seized was hemp, not marijuana." *Id.* ¶ 8. According to Jordan, the detective responded that the substance "tested positive as marijuana." *Id.* Jordan informed the detective that she "had paperwork in the form of testing from third party laboratories that demonstrated the material was hemp and not marijuana." *Id.* Jordan claims that the detective "would not listen to [her] explanation that the material was hemp, or [accept] [her] offer of documentation that would prove the material was hemp and not marijuana." *Id.* ¶ 9. The detective informed Jordan that the material "would be destroyed." *Id.* Stewart subsequently learned that "the City of Tacoma had destroyed [his] property." Dkt. 29-1, ¶ 12.

Stewart sued Extra Space and the City of Tacoma in Pierce County Superior Court, asserting against Extra Space a claim for breach of contract and against Tacoma state law claims for conversion and negligence and 42 U.S.C. § 1983 claims for violations of his "constitutional right to due process" and his Fourth Amendment right to be free from unreasonable searches and seizures. Dkt. 1-2, ¶¶ 40–74. Stewart asserts that the material in his storage unit was hemp and that it had a value of $2,750,000. *Id.* ¶¶ 5,

9. Tacoma removed the matter to this Court, asserting federal question jurisdiction. Dkt. 1 at 1–2 (citing 28 U.S.C. §§ 1331, 1441(a)).

Extra Space subsequently moved for summary judgment on the breach of contract claim. Dkt. 27.

## II.  DISCUSSION

Extra Space assets that, under Section 16 of the rental agreement, it is not liable to Stewart for any damage or loss to property stored at the facility unless the damage or loss results from Extra Space's fraud, gross negligence, or willful violations of law. Dkt. 27 at 2, 4. Extra Space contends that the only issue in this case is whether its act of reporting to the police "what appeared to be large quantities of marijuana" was grossly negligent. *Id.* at 4. It argues that this conduct was not grossly negligent because "any reasonable business owner" would have done the same under the circumstances. *Id.* It further asserts that "Extra Space did not confiscate the alleged hemp in the plaintiff's storage locker; the Tacoma Police did" and "Extra Space did not dispose of the alleged hemp in the plaintiff's storage locker; the City of Tacoma did." *Id.* at 5.

Stewart responds that, "[b]efore a self-storage facility like Extra Space may seize and sell a person's property to recover unpaid storage fees, it must follow strict notice procedures set forth in Washington law" and that "Extra Space did not follow those procedures." Dkt. 29 at 1. Stewart therefore asserts that genuine issues of material fact exist as to whether Extra Space engaged in "willful violations of law" or "gross negligence," "such that Section 16 does not apply." *Id.*

1    Extra Space replies that "[t]his is not a case where the plaintiff's property was sold
2    at auction" and, therefore, Washington law concerning notice of lien sale requirements is
3    irrelevant. Dkt. 30 at 3. Extra Space contends that the proper inquiry is whether it acted
4    with gross negligence by notifying the police under the circumstances. *Id.* at 2. Extra
5    Space reiterates that it did not: "[H]ad Extra Space called the police at any point because
6    it suspected that the plaintiff was engaged in illegal activity, it would not have been gross
7    negligence. That Extra Space did so after the plaintiff failed to pay his rent is
8    immaterial." *Id.*

9    In Washington, to prove a breach of contract claim a plaintiff must demonstrate
10   that "that there exists a contract imposing a duty on the defendant," "the defendant failed
11   to fully perform that duty," and "the amount of damages claimed is necessary to place the
12   plaintiff in the position it would have occupied had the duty been fulfilled." *Jacob's*
13   *Meadow Owners Ass'n v. Plateau 44 II, LLC*, 139 Wn. App. 743, 757 n.3 (2007) (citing
14   RESTATEMENT (SECOND) OF CONTRACTS § 235(b) (AM. L. INST. 1979); *Rathke v.*
15   *Roberts*, 33 Wn.2d 858, 865 (1949)).

16   The rental agreement at issue required Stewart to pay Extra Space monthly rental
17   payments: "[T]he Monthly Rental Charge shall be due on the same day every month" and
18   "Customer shall pay Operator the Monthly Rental Charge . . . without prior notice or
19   billing from Operator." Dkt. 27-2 at 5. Stewart's failure to pay rent on and after February
20   12, 2021, rendered him in default of the rental agreement: "If Customer shall fail or
21   refuse to perform any of the covenants or terms of this Agreement, . . . Customer shall be
22

ORDER - 5

deemed in default in the performance of this Agreement, except as limited by law." *Id.* at 8

Stewart further agreed under Section 10 that, if he remained in default of the agreement for 30 days, Extra Space was authorized to remove the lock on his storage unit, enter the unit, and examine its contents:

> **ACCESS**
> . . . .
> 10) *Customer grants Operator and Operator's Agents* or any governmental authority *access to the Space*: a) upon three (3) days prior written notice, b) *upon default of the Agreement by Customer for thirty (30) days*, c) in emergency circumstances (defined as imminent injury to persons or property), or d) as required by law. *If Customer fails to grant access, Operator, Operator's Agents* or the agents of any governmental authority s*hall have the right to remove Customer's lock and enter the Space to examine the contents*, to make repairs or alterations, to take reasonable steps to preserve the Space, to comply with the law, or to enforce Operator's rights; including the right to relocate Customer's belongings if necessary. In the event that Operator must replace the lock, Operator may charge Customer for the lock.

Dkt. 27-2 at 7 (emphasis added).

Nothing in this provision required Extra Space to provide Stewart notice of its intent to enter the storage unit when he had been in default of the agreement for at least 30 days. *See id.* When the Extra Space employees entered the storage unit on April 14, 2021, Stewart had been in default of the agreement for more than *60 days*. *See* Dkt. 27-2, ¶ 4; Dkt. 29-1, ¶ 6. Therefore, Extra Space was plainly authorized to enter and examine the contents of the storage unit when it did.

The rental agreement also limits Extra Space's liability to any damage or loss to stored property to that which results from Extra Space's fraud, gross negligence, or willful violation of law:

**LIMITATION OF OPERATOR'S LIABILITY AND INDEMNITY**

. . . .

16) Operator, Operator's Agents, Operator's affiliates and the Facility's owner, if different, shall not be liable to Customer for any damage or loss to any person or property at the Facility and to any property stored in the Space, arising from *any cause whatsoever*, including, but not limited to, theft, fire, mysterious disappearance, mold, mildew, water, rain, rodents, inspects, acts of God, partial or sole negligence or failure to act of Operator or Operator's Agents, *except for damage or loss resulting from Operator's fraud, gross negligence or willful violation of law*.

Dkt. 27-2 at 7 (emphasis added).

Stewart does not claim that Extra Space engaged in any fraudulent act. *See generally* Dkt. 29. He rather contends that Extra Space (1) willfully violated Washington law by failing to provide him adequate notice of a lien sale under the Self-Service Storage Facility Act (Storage Act), chapter 19.150 RCW; and similarly (2) acted with gross negligence by violating those statutory notice requirements. *Id.* at 7–9.

Whether Extra Space's preliminary lien notice or final notice of lien sale complied with the Storage Act is of no consequence. Those notices are required before the owner of a storage facility sells an occupant's personal property as authorized by that Act. *See* RCW 19.150.040–.070. They are also required if the owner elects, "instead of sale, [t]o dispose of the property in any reasonable manner," which is permitted only "[i]f the total value of property in the storage space is less than three hundred dollars." RCW 19.150.060(1)(c). An owner that disposes of personal property must do so "by donation to

ORDER - 7

a not-for-profit charitable organization, removal of the personal property from the self-service storage facility by a trash hauler or recycler, or any other method that in the discretion of the owner is reasonable under the circumstances." RCW 19.150.010(8).

Extra Space never sold the property at issue. It also did not "dispose" of the property, as that term is used in the Storage Act. Instead, Extra Space employees lawfully entered the storage unit under Section 10 of the rental agreement, *see* Dkt. 27-2 at 7, discovered what they suspected to be large quantities of potentially illegally-possessed marijuana stored on Extra Space's property, and reported the suspected marijuana to the police. Dkt. 27-1, ¶ 3. The police, not Extra Space, confiscated the property and, according to Stewart, eventually destroyed it. *See id.*; Dkt. 29-1, ¶ 12; Dkt. 29-2, ¶ 9. The issue, then, is not whether Extra Space complied with the notice of lien sale requirements under the Storage Act. It is whether the property at issue was destroyed as a result of Extra Space's gross negligence.[2]

In Washington, "'gross negligence means the failure to exercise slight care.'" *Harper v. State*, 192 Wn.2d 328, 342 (2018) (quoting *Nist v. Tudor*, 67 Wn.2d 322, 324 (1965)). It is accordingly "'negligence substantially and appreciably greater than ordinary negligence.'" *Harper*, 192 Wn.2d at 342 (quoting *Nist*, 67 Wn.2d at 324). Ordinary negligence, by contrast, is the "[d]uty to exercise ordinary care, or, alternatively phrased,

---

[2] For these reasons, the lien sale provisions under the rental agreement and the provision authorizing Extra Space to dispose of any "abandoned" property are irrelevant to this case. *See* Dkt. 27-1 at 8 (Sections 22 through 25 authorize Extra Space to sell Stewart's personal property as authorized by the Storage Act, and Section 29 authorizes Extra Space to dispose of any "abandoned" property).

the duty to exercise such care as a reasonable person would exercise under the same or similar circumstances." *Mathis v. Ammons*, 84 Wn. App. 411, 416 (1996).

Stewart fails to establish a genuine issue of material fact as to whether the Extra Space employees' act of notifying the police was grossly negligent. Stewart testified that he used the storage unit to store "1,378 pounds of high quality hemp flower" that he lawfully harvested pursuant to a hemp producer license. Dkt. 29-1, ¶¶ 2, 4. Stewart asserts that tests "establish[ed] that the material [he] harvested was hemp, not marijuana, because of its low Delta-9 THC content." Dkt. 29-1, ¶ 3. He alleges that the hemp was worth approximately $2,750,000. Dkt. 41, ¶ 10.

But there is no evidence in the record indicating that the Extra Space employees knew or should have known that the substance was legally-possessed hemp when they entered and examined the storage unit. *See Jorgenson v. Crane*, 86 Wash. 273, 275 (1915) (negligence is determined by what "the [person] knew, or as a reasonable person ought to have known" under the circumstances). According to Stewart, the only characteristic that distinguished his hemp from marijuana was "its low Delta-9 THC content." Dkt. 29-1, ¶ 3. The record is thus devoid of any evidence indicating that an ordinary person would have been able to visually distinguish Stewart's hemp from marijuana. Moreover, when Stewart signed his rental agreement, he declared the value of his stored property to be $2,000, Dkt. 27-2 at 5, and "agree[d] that the total value of the property stored shall not exceed $5,000 unless Operator has agreed in writing for Customer to store property exceeding $5,000." *Id.* at 7 (boldface omitted). There is no evidence in the record that Extra Space agreed to allow Stewart to store property exceeding $5,000 in the unit.

ORDER - 9

1   Therefore, when the Extra Space employees entered the unit and unexpectedly discovered

2   over 1,000 pounds of what they reasonably perceived to be marijuana, they also

3   reasonably believed that Stewart may have been using Extra Space's facility to hide his

4   engagement in illegal activity.

5        In Washington, the knowing possession of over 40 grams of cannabis unless

6   otherwise authorized by law is a gross misdemeanor. *See* RCW 69.50.204(c)(17);[3] RCW

7   69.50.4013;[4] RCW 69.50.360(3);[5] RCW 69.50.4014(1).[6] But when the Extra Space

8   employees entered the storage unit in April 2021, it was classified as a class C felony. *See*

9   Former RCW 69.50.4013(2) (LAWS OF 2017, ch. 317, § 15). Stewart testified that he

---

[3] RCW 69.50.204(c)(17) lists "Cannabis" as a Schedule I controlled substance.

[4] RCW 69.50.4013(1)(a) provides that it is generally "unlawful for any person to . . . [k]nowingly possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his or her professional practice." Subsection (2)(a) provides that "a violation of subsection (1)(a) . . . of this section" is generally "a gross misdemeanor punishable by imprisonment of up to 180 days in jail, or by a fine of not more than $1,000, or both such imprisonment and fine." RCW 69.50.4013(2)(a). This section further provides that "[t]he possession, by a person 21 years of age or older, of useable cannabis . . . in amounts that do not exceed those set forth in RCW 69.50.360(3) is not a violation of this section, this chapter, or any other provision of Washington state law." RCW 69.50.4013(3)(a).

[5] RCW 69.50.360(3) enumerates the amounts of various forms of cannabis that a validly licensed cannabis retailer may sell to any person who is 21 years of age or older. This statute authorizes the sale of "[o]ne ounce of usable cannabis." RCW 69.50.360(3)(a). One ounce amounts to roughly 28 grams. Washington law therefore does not criminalize the possession of roughly 28 grams of cannabis by a person who is 21 years of age or older. *See* RCW 69.50.4013(3)(a).

[6] RCW 69.50.4014(1) provides that, unless otherwise authorized by law, "any person found guilty of knowing possession of 40 grams or less of cannabis is guilty of a misdemeanor." Accordingly, the knowing possession of more than 40 grams of cannabis is generally a gross misdemeanor. *See* RCW 69.50.4013(2)(a).

ORDER - 10

stored *1,378 pounds* of hemp in the storage unit. Dkt 29-1, ¶ 4. This far exceeds 40 grams.

Additionally, based on the large quantity of product in Stewart's storage unit, a reasonable person in the position of the Extra Space employees may have also reasonably believed that Stewart possessed the suspected marijuana with intent to deliver, which would be a class C felony. *See* RCW 69.50.401(2)(c) (possession with intent to deliver cannabis is a class C felony unless otherwise authorized by law); *State v. Brown*, 68 Wn. App. 480, 484 (1993) (intent to deliver a controlled substance may be "inferred from the possession of a [large] quantity of narcotics" and just "one additional factor").

A reasonable person under the circumstances would have accordingly been likely concerned that Stewart may have been using Extra Space's property to engage in illegal activity. Extra Space's employees acted reasonably as a matter of law by a reporting the suspected crime to the police, who are entrusted to investigate suspected criminal activity and determine whether crimes have occurred.

Relatedly, by not reporting the suspected marijuana to the police, a reasonable person under the circumstances would have been concerned of potentially exposing him- or herself to criminal accomplice liability. *See* RCW 9A.08.020(3)(a)(ii) ("A person is an accomplice of another person in the commission of the crime if . . . [w]ith knowledge that it will promote or facilitate the commission of the crime, he or she . . . [a]ids . . . such other person in planning or committing it."); *State v. Ferreira*, 69 Wn. App. 465, 471 (1993) ("'Aid' means *all assistance* whether given by words, *acts*, encouragement or

support." (Emphasis added)). For this reason, too, the Extra Space employees acted reasonably as a matter of law by reporting the suspected marijuana to the police.[7]

Therefore, the Extra Space employees' act of reporting the suspected marijuana to the police did not amount to negligence, let alone gross negligence. Stewart accordingly fails to establish a genuine issue of material fact in support of his breach of contract claim.[8]

### III.  ORDER

Therefore, it is hereby **ORDERED** that Extra Space's motion for summary judgment, Dkt. 27, is **GRANTED**. Stewart's breach of contract claim is **DISMISSED with prejudice**.

Dated this 9th day of July, 2024.

BENJAMIN H. SETTLE
United States District Judge

---

[7] Because Extra Space reasonably believed that Stewart may have been using the storage unit to engage in criminal activity, Extra Space was not required to inform him that it intended to report the suspected marijuana to the police, as he suggests it should have done. See Dkt. 29 at 5 ("Before giving away Stewart's property, Extra Space made no effort to apprise Stewart of its actions or to tell him that it would give his property to an unrelated third party without Stewart's permission to do so."). Stewart also wrongly assumes that Extra Space "g[ave] away" his property to the police. *Id.* The record on this point instead indicates only that the police *confiscated* it. See Dkt. 27-1, ¶ 3.

[8] Neither party addresses whether the Extra Space employees' act of notifying the police was a proximate cause of the hemp's destruction. Again, Stewart asserts that Tacoma—not Extra Space—destroyed the hemp. However, because the Extra Space employees did not act with gross negligence, the Court expresses no opinion on this issue.