UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| AARON STEWART,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>CITY OF TACOMA,<br><br>　　　　　　Defendant. | CASE NO. C23-5786 BHS<br><br>ORDER |

This matter is before the Court on Defendant City of Tacoma's motion for protective order to preclude deposition testimony on several topics allegedly protected by attorney client privilege and the attorney work product doctrine. Dkt. 70.

**I.   BACKGROUND**

In December 2019, Plaintiff Aaron Stewart rented a storage unit from defendant Extra Space Storage. In it, he stored what he now claims was $2.75 million worth of legal hemp. *See* Dkt. 41, ¶ 10.

In April 2021, after Stewart failed to pay three months of rent, Extra Space employees entered the storage unit and found over 100 plastic bins of "what [they] suspected to be marijuana." Dkt. 27-1 at 1. The employees contacted the Tacoma Police

ORDER - 1

1  Department, who confiscated and destroyed the contents of the storage unit. *Id.*; Dkt. 41
2  at 4.
3        Stewart wrote a letter to the Tacoma City Manager demanding Tacoma reimburse
4  him for his "losses of approximately $400,000 in business property due to the Tacoma
5  Police Department's gross negligence for the illegal destruction of [his] property." Dkt.
6  71, Ex. A at 9. He threatened to sue if Tacoma did not "respond or provide the
7  reimbursement owed within 5 business days." *Id.* at 11.
8        Tacoma denied Stewart's tort claim in a letter from Deputy City Attorney
9  Michelle Yotter, informing him that Tacoma was not liable "[f]ollowing a thorough
10 investigation and analysis of [his] claim." *Id.*, Ex. E at 16. Stewart sought details and
11 documents pertaining to the investigation from the City Attorney's office and the Public
12 Records Office, but his requests were denied. *Id.* at 20–22.
13       Stewart sued Extra Space and Tacoma in Pierce County Superior Court. He
14 alleged breach of contract against Extra Space, and conversion, negligence, and 42
15 U.S.C. § 1983 claims for violations of his due process and Fourth Amendment rights
16 against Tacoma. Dkt. 1-2. Tacoma removed the matter to this Court based on the § 1983
17 claim. Dkt. 1 at 1–2.
18       The Court dismissed Extra Space on summary judgment. Dkts. 27, 49. Stewart's
19 claims against Tacoma remain.
20       Stewart served 28 interrogatories and 25 requests for production on Tacoma. Dkt.
21 71, Ex. J. Tacoma objected to discovery relating to its investigation and denial of
22 Stewart's tort claim because it covered "information protected by the attorney-client

privilege and the work product doctrine." Dkt. 71, Ex. G at 29–33. It instead provided a Privilege Log and invited "a 26(i) conference to discuss its objection[s]" to the requests for production. *Id.* at 32–33. Tacoma thoroughly answered the interrogatory that sought "all facts" supporting Tacoma's affirmative defenses, including for example, that Stewart was contributorily negligent and failed to mitigate his damages. Dkt. 71, Ex. J at 57–60. Stewart served a Rule 30(b)(6) deposition notice, and Tacoma objected to several of the topics, again on the basis of attorney client privilege and the work product doctrine. Dkt. 71, Ex. H, I. After much back and forth, including another set of interrogatories, an amended Rule 30(b)(6) notice, and a second amended 30(b)(6) deposition notice, the parties sought an emergency telephone conference with the Court to discuss the dispute over the deposition topics. Dkt 71, Ex. J, M, N. The Court concluded it could not "resolve the underlying dispute without briefing." Dkt. 68.

Tacoma now moves for a protective order, arguing Topics 20–26 in Stewart's second amended Rule 30(b)(6) deposition notice are objectionable because they continue to seek attorney work product or attorney client privileged communications:

20. Describe the steps undertaken, documents reviewed, and witnesses interviewed as part of The City's "thorough investigation and analysis" of Mr. Stewart's tort claim as it was communicated in the April 19, 2023, letter denying Mr. Stewart's claim for damages.

21. All facts, witnesses, and documents which The City bases its contention set forth in ¶ 76 of the Answer to Plaintiff's Amended Complaint stating that "plaintiff's injuries were caused, in whole or in part, by persons and/or entities over which the City of Tacoma has no control [.]

22. All facts, witnesses, and documents which The City bases its contention set forth in ¶ 78 of the Answer to Plaintiff's Amended Complaint stating that

ORDER - 3

"the damages claimed by Plaintiff were caused in whole or part by Plaintiff's own actions and negligence."

23. All facts, witnesses, and documents which The City bases its contention set forth in ¶ 79 of the Answer to Plaintiff's Amended Complaint stating that "Plaintiff failed to mitigate his damages."

24. All facts, witnesses, and documents which The City bases its contention set forth in ¶ 80 of the Answer to Plaintiff's Amended Complaint stating that "this defendant at all times acted in good faith in the performance of its duties and is therefore immune from suit for the matters charged in Plaintiff's complaint."

25. All facts, witnesses, and documents which The City bases its contention set forth in ¶ 81 of the Answer to Plaintiff's Amended Complaint stating that the City "is entitled to qualified immunity as to both state and federal claims of the Plaintiff."

26. All facts, witnesses, and documents which The City bases its contention set forth in ¶ 81 of the Answer to Plaintiff's Amended Complaint stating that the City "is entitled to qualified immunity as to both state and federal claims of the Plaintiff."

Dkt. 70 at 6–7. Tacoma argues these topics cover information protected by attorney client privilege and the work product doctrine, and that they are "cumulative, overly broad, improper, and not reasonably calculated to lead to the discovery of admissible evidence." *Id.* Stewart responds that Tacoma's motion does not establish good cause for a protective order because it is "based on false assumptions and speculation that privileges might possibly be invaded." Dkt. 76 at 2.

## II.  DISCUSSION

The goal of Fed. R. Civ. P. 30(b)(6) is to "'enable the responding organization to identify the person who is best situated to answer questions about the matter.'" *Luken v. Christensen Grp. Inc.*, No. C16-5214 RBL, 2018 WL 1994121, at *1 (W.D. Wash. 2018) (citing Wright & Miller, 8A Federal Practice & Procedure § 2103 at 454 (3d ed.)). "This

1  Rule was intended to prevent the officers or managers of larger organizations from
2  'bandying,' the practice of disclaiming knowledge of facts clearly known to the
3  organization." *Id.* at 452–53.
4        A party seeking to depose an organization "must describe with reasonable
5  particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). A designated person
6  from the organization must testify "to the matters known or reasonably available to the
7  organization." *Boyer v. Reed Smith, LLP*, No. C12-5815 RJB, 2013 WL 5724046, at *2
8  (W.D. Wash. 2013). The scope of the 30(b)(6) deposition is governed by Rule 26.
9  *Simkins by Simkins v. N.Y. Life Ins. Co.*, No. 23-CV-578, 2023 WL 6541460 (W.D.
10 Wash. 2023).
11       "Parties may obtain discovery regarding any nonprivileged matter that is relevant
12 to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P.
13 26(b)(1).
14       Attorney client privilege protects confidential disclosures between a client and
15 attorney made for purposes of legal assistance. *Fisher v. United States*, 425 U.S. 391, 403
16 (1976). The privilege extends only to communications sought for legal advice; it does not
17 protect disclosure of the underlying facts by those who communicated with the attorney.
18 *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). Communications protected by
19 attorney client privilege are outside the scope of discovery. *Phoenix Sols. Inc. v. Wells*
20 *Fargo Bank, N.A.*, 254 F.R.D. 568, 575 (N.D. Cal 2008)).
21       Work product prepared in anticipation of litigation by a party or its
22 representatives, including its attorneys, is similarly protected. Fed. R. Civ. P. 26(b)(3).

Work product is only discoverable if it falls within the scope of discovery under Rule 26(b)(1), and if the opposing party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.* Nonetheless, the "mental impressions, conclusions, opinions, or legal theories of a party's attorneys" are protected. Fed. R. Civ. P. 26(b)(3)(B).

The Court must limit "proposed discovery [that] is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). A protective order may, among other things, "forbid[] the disclosure or discovery" sought and "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A), (D). The party seeking the protective order must have "in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1).

Tacoma has sufficiently represented that it has conferred in good faith with Stewart before requesting a protective order on these topics.

Stewart's deposition topics 20–26 do not comport with Rule 30(b)(6). These overbroad, highly generalized topics would improperly burden Tacoma with "production and preparation of a witness on every fact of the litigation." *Luken*, 2018 WL 1994121, at *2. It is not Tacoma's responsibility to prepare any specific employee for a 30(b)(6) deposition on the underlying facts of this case. Tacoma's attorneys are best suited to speak for Tacoma on its legal defenses, which they do in pleadings and in court, not in a 30(b)(6) deposition.

1 | Stewart already served and Tacoma already answered 28 interrogatories, more
2 | than the Rule 33 limit. Fed. R. Civ. P. 33(a)(1) (A party may generally serve no more
3 | than 25 written interrogatories.). Tacoma's answers address the facts underlying its
4 | affirmative defenses; Topics 20–26 duplicate what Stewart has already asked and
5 | Tacoma has already answered. Dkt. 71, Ex. J. Deposition testimony on Tacoma's
6 | affirmative defenses and assertions in its Answer, Dkt. 44, is not "proportional to the
7 | needs of the case." Fed. R. Civ. P. 26(b)(1).

8 | Furthermore, materials from Yotter's investigation of Stewart's negligence claim
9 | against Tacoma are protected by attorney client privilege and the work product doctrine.
10 | Yotter is Tacoma's attorney, and necessarily communicated legal advice to Tacoma when
11 | investigating Stewart's claim. Tacoma's investigation was triggered by Stewart's threat
12 | to sue if it did not pay him $400,000 and was plainly in anticipation of that potential
13 | litigation. *See* Dkt. 71, Ex. A. at 11 ("Should I not receive a response I will have no
14 | recourse but to file suit against the City"). Stewart has not claimed or demonstrated that
15 | he has a "substantial need" for the investigation materials to prepare for his negligence
16 | claim against Tacoma. Stewart's claim is based on the destruction of his property, not on
17 | Tacoma's subsequent investigation. Fed. R. Civ. P. 26(b)(3). Yotter's mental impressions
18 | and legal opinions arising from her investigation are not the "pivotal issue in the current
19 | litigation." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir.
20 | 1992). The materials relating to the Tacoma's investigation of Stewart's claim are
21 | protected under Rule 26.

Tacoma's motion for protective order on Topics 20–26 is therefore **GRANTED**. Deposition testimony on these topics is precluded.

**IT IS SO ORDERED.**

Dated this 28th day of February, 2024.

_____
BENJAMIN H. SETTLE
United States District Judge