1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AARON STEWART and TIERRA
HARVEST, LLC,

                    Plaintiffs,

        v.

CITY OF TACOMA,

                    Defendant.

CASE NO. C23-5786 BHS

ORDER

        This matter is before the Court on defendant City of Tacoma's motion for

summary judgment, Dkt. 85. Because Stewart does not establish all the elements essential

to his four claims, the motion is granted.

## I.    BACKGROUND

        In December 2019, Stewart contracted with Extra Space Storage[1] to rent a storage

unit. Dkt. 41-1. Stewart agreed not to use the unit for any unlawful purpose. *Id.* at 1, 5.

The agreement included several provisions relating to default and termination. First,

---

[1] Stewart also sued Extra Space for breach of contract. The Court dismissed that claim on summary judgment, Dkt. 49.

1    Stewart agreed that if he failed to pay the monthly rent, Extra Space would have a lien on

2    his stored property. *Id.* at 6, ¶ 22. After 14 days of nonpayment, Extra Space was

3    authorized to sell the property so long as Stewart received reasonable notice. *Id.* Stewart,

4    or anyone else with a right to the property, could stop the sale if they paid the pending

5    balance in full. *Id.*, ¶ 23. If Stewart defaulted, Extra Space could terminate the agreement

6    after providing Stewart 15 days' written notice. *Id.* at 6, ¶ 28. Stewart also agreed to

7    "move out and completely vacate" his storage unit "prior to the anticipated termination

8    date." *Id.* at 6, ¶ 29. Property in the storage unit would be considered "conclusively

9    abandoned" after termination of the agreement, upon default of the agreement, or when

10   Extra Space reasonably concluded Stewart had abandoned the property and unit. *Id.* Extra

11   Space could "dispose of such in a manner that" it saw fit. *Id.* Extra Space employees and

12   government agents were authorized to access the unit, examine its contents, and "comply

13   with the law" upon default of the agreement. *Id.* at 5, ¶ 10. This included "the right to

14   relocate" the contents of the storage unit "if necessary." *Id.*

15        Stewart's last monthly payment to Extra Space was in January 2021. Dkt. 29-1 at

16   2. He failed to make payments in February, March, and April, because, he claims, a credit

17   card expired. *Id.* Extra Space sent him lien and foreclosure notices on March 2 and March

18   23, 2021. *Id.* at 2, 9. Stewart denies receiving these notices. Dkt. 29-2 at 2.

19        The March 23 notice informed Stewart that his property would be auctioned on

20   April 20, 2021. Dkt. 95 at 12. Extra Space gave Stewart the option to "pay [his] account

21   current prior to auction," in which case he would be responsible for securing his unit

22   again. *Id.* The letter stated, "[i]f you have abandoned the unit and do not wish to recover

1   the contents, you must complete the abandonment section below and return this letter."
2   *Id.*

3       Extra Space employee Cynthia Alvarez Garman testified that on April 7, 2021, a
4   woman named Jennifer Jordan—Stewart's employee—called Extra Space and asked how
5   much Stewart owed on the storage unit. Dkt. 95 at 10, 27; Dkt. 94 at 2. Jordan indicated
6   she may come pay the balance herself, but she did not do so. Dkt. 95 at 10; Dkt. 29-2.

7       On April 14, 2021, Extra Space employees entered Stewart's storage unit and
8   found 106 27-gallon plastic totes—roughly 1900 pounds—of what they believed to be
9   marijuana. Dkt. 95 at 10; Dkt. 27-1; Dkt. 116 at 8. They called the Tacoma Police, who
10  took custody of the totes. *Id.* at 21.

11      That afternoon, Jordan stated in her declaration, Stewart told her that the Tacoma
12  Police Department had seized the storage unit's contents. Dkt. 29-2 at 2.

13      The next day, Tacoma Police Sergeant Kenneth Smith authorized the property's
14  destruction. Dkt. 95 at 98; Dkt. 41. The police report identified the property as "Drugs –
15  Marijuana" based on "[t]he smell and the way it looked." Dkt. 95 at 51. Tacoma Police
16  Officer Hannah Bush testified that even after the police department seized Stewart's
17  property, he retained the right to claim it. Dkt. 95 at 57, 74.

18      On April 20, Jordan called the Tacoma Police Department on Stewart's behalf and
19  explained the property was hemp, not marijuana. Dkt. 29-2. She declared that a detective,
20  whose name she could not recall, told her the seized material "would be destroyed." *Id.*
21  She relayed this conversation to Stewart. *Id.* Stewart's own expert states that Jordan
22  spoke with Sergeant Smith:

1          [W]hile Smith denies some of Ms. Jordan's statements regarding
2      their conversation, he also does not recall what they discussed. However,
       the irrefutable fact is that even though Sergeant Smith authorized the
3      destruction of 1910 pounds of Hemp on April 15, 2021, **this property was
       not physically destroyed in Spokane, WA until June 24, 2021 – more
       than 60 days later."**
4
Dkt. 95 at 154.
5
6      Stewart claims that the storage unit held—and that Tacoma eventually

destroyed—several million dollars' worth[2] of legal industrial hemp flower, not

marijuana. Dkt. 114. Stewart was licensed by Washington State Department of

Agriculture (WSDA) to grow and harvest the hemp.[3] Dkt 29-1. He registered a

warehouse in Chelan Falls as the storage location for his hemp and received certification

from the WSDA that his hemp contained less than 0.3% concentration of delta-9

tetrahydrocannabinol (THC). Dkt. 87 at 10; Dkt. 95 at 238–40. Stewart did not include

these WSDA documents in the storage unit. Dkt. 86 at 12, 35. The legal owner of the

property in the storage unit was Tierra Harvest, LLC.[4] Dkt. 82 at 58. Stewart is the LLC's

sole member. Dkt. 73 at 1.

---

    [2] Stewart's claimed value of the storage unit's contents has varied greatly throughout
litigation. He told Extra Space the contents were worth $2,000 when he rented the unit. Dkt. 41-
1. In 2022, he demanded Tacoma reimburse him for "losses of approximately $400,000 in
business property." Dkt. 71 at 9. He testified in September 2024 that the unit contained over
$12.9 million worth of hemp. Dkt. 86 at 6–7. His third amended complaint, filed April 2025,
alleges the hemp was worth approximately $2.75 million. Dkt. 114 at 2. Similarly, his estimates
of the weight of the hemp have varied from 1,378 pounds to 865,000 grams (roughly 1,907
pounds). Dkt. 29-1 at 2; Dkt. 86 at 6–7.

    [3] RCW 15.140.060 authorizes the Department of Agriculture to issue hemp producer
licenses to qualified applicants.

    [4] Tierra Harvest is now a plaintiff in this case. Dkt. 114.

ORDER - 4

1      In November 2022, Stewart sent a letter to the Tacoma City Manager demanding

2   Tacoma reimburse him for his business property losses "due to the Tacoma Police

3   Department's gross negligence for the illegal destruction of [his] property." Dkt. 71, Ex.

4   A. Tacoma Deputy City Attorney Michelle Yotter denied Stewart's tort claim in a letter,

5   informing him that she was "unable to find any cause of action against the City for the

6   asserted damages." *Id.*, Ex. C.

7      In April 2023, Stewart sued Tacoma in Pierce County Superior Court. Dkt. 1-2. He

8   asserted conversion, negligence, and 42 U.S.C. § 1983 *Monell* claims for violations of his

9   due process and Fourth Amendment rights. Dkt. 1-2. Tacoma removed the matter here

10  based on the § 1983 claims. Dkt. 1 at 1–2.

11     WSDA's Cannabis Programs Manager, Patricia Ehrlich testified about WSDA's

12  regulation of Stewart's hemp. She testified that there were no "registered land areas"

13  other than the Chelan Falls property associated with Stewart's license in the WSDA

14  records. Dkt. 87 at 2. She also testified that WSDA has "no oversight of producers who

15  are no longer licensed," and "previously . . . certified" hemp can be stored "wherever,"

16  including at a "house" or "storage unit." Dkt. 112 at 109. When asked if one needs a THC

17  certification from the producer when they "buy a pound of hemp . . . and leave it at [their]

18  home," she replied, "No." *Id.* at 114.

19     Tacoma Police Lieutenant Jeffrey Katz testified about the police department's

20  policies regarding suspected contraband. He testified that although contraband is not

21  always destroyed, in cases like this, "suspected contraband . . .  is subject to destruction."

22  Dkt. 112 at 37; Dkt. 116 at 7. He stated that when property is "potentially illegal to

possess, then the owner is a suspect and would be contacted as part of the investigation most likely . . . It changes drastically, though when the property is—if it's conclusively believed to not be illegal, again, it just—it depends on what you have." *Id.* at 7, 28. Katz testified that it was Tacoma's policy to assess whether to contact the owner of found property on a case-by-case basis dependent on the "nature of the item, whether or not it's potentially contraband, for example, and . . . how the matter is being handled." *Id.* at 28–29. When asked if it was the Tacoma Police Department's "policy . . . or custom to destroy potential contraband," he responded that, "It is custom to do that when it's reasonable to do that." *Id.* at 29.

Stewart has since amended his complaint to add Tierra Harvest as a plaintiff. Dkt. 114. His third amended complaint asserts state law conversion and negligence claims, and *Monell* claims asserting Tacoma's policies were the moving force behind the non-party officers' violation of his constitutional right to due process and unlawful search and seizure. *Id.*

Tacoma moves for summary judgment, arguing primarily that Stewart unequivocally abandoned the property and thus did not have a legally cognizable interest in it when Tacoma took control of and destroyed it. Dkt. 85 at 4–5. It asserts Stewart cannot establish municipal liability because there is no evidence of a custom or policy that was the moving force behind the alleged constitutional violation. *Id.* at 12–13.

Tacoma also argues Stewart's conversion claim fails because the police were lawfully justified in seizing the hemp and that his negligence claim fails because he cannot establish Tacoma owed him any duty. *Id.* at 14, 17. Tacoma accepts, for purposes

1    of its summary judgment motion, that the storage unit contained commercially grown

2    hemp owned by Tierra Harvest. *Id.* at 3 n.2.

3        Stewart responds that he retained ownership of the hemp because the lien notice

4    gave him until the auction date, April 20, to pay and regain access to his storage unit.

5    Dkt. 94 at 4, 12–13. He specifies that his § 1983 *Monell* claims challenge Tacoma's

6    failure to train law enforcement to distinguish hemp from marijuana, though that claim is

7    not in any of his four complaints. *Id.* at 21–22. Stewart disputes that the hemp was

8    contraband and argues RCW 63.21 requires law enforcement to attempt to notify the

9    owner of found property and retain the property 60 days. *Id.* at 23, 29.

10        The issues are discussed in turn.

11                            **II.   DISCUSSION**

12        Summary judgment is proper if the pleadings, the discovery and disclosure

13    materials on file, and any affidavits show that there is "no genuine dispute as to any

14    material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

15    P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence

16    in the light most favorable to the nonmoving party and draw all reasonable inferences in

17    that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986);

18    *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact

19    exists where there is sufficient evidence for a reasonable factfinder to find for the

20    nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence

21    presents a sufficient disagreement to require submission to a jury or whether it is so one-

22    sided that one party must prevail as a matter of law." *Id.* at 251–52. The moving party

1  bears the initial burden of showing that there is no evidence that supports an element

2  essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

3  (1986).  Once the movant has met this burden, the nonmoving party then must show that

4  there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails

5  to establish the existence of a genuine issue of material fact, "the moving party is entitled

6  to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

7  **A.    Stewart's § 1983 *Monell* claims do not survive summary judgment because he
8  does not show a longstanding municipal custom or policy that was the driving force
   behind his alleged constitutional violations.**

9        The Fourth Amendment protects against unreasonable searches and seizures by the

10  government. U.S. Const. Amend. IV. A search involves an intrusion upon a reasonable

11  expectation of privacy, while a seizure of property "'occurs when there is some

12  meaningful interference with an individual's possessory interests in that property.'"

13  *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027 (9th Cir. 2012) (quoting *United States*

14  *v. Jacobsen*, 466 U.S. 109, 113 (1984)). To challenge a seizure, the plaintiff need only

15  show a possessory interest in the seized property. *Id.* at 1028–29 (citing *Miranda v. City*

16  *of Cornelius*, 429 F.3d 858 (9th Cir. 2005). Possessory interests can exist even in

17  contraband. *Id.* at 1030 (citing *Jacobsen*, 466 U.S. at 124–25).

18        Tacoma argues that Stewart lost any privacy expectation in the hemp because he

19  abandoned it, and thus lacks standing to bring Fourth Amendment claims. Dkt. 85 at 8–9;

20  Dkt. 100 at 2–3. It also argues that its seizure of the hemp was reasonable in any event,

21  because Stewart consented, in his contract with Extra Space, to government agents

22  entering, removing, and disposing any property left in the storage unit. Dkt. 85 at 8–9.

1    Tacoma further argues Washington law extinguishes Stewart's property interest in the

2    hemp because it was an "imitation controlled substance[] . . . subject to seizure,

3    forfeiture, and disposition." Dkt. 100 at 4 (quoting RCW 69.52.040).

4         Stewart concedes that "the initial search at the storage facility by Tacoma Police

5    may have been legal," but challenges the Tacoma police department's seizure and

6    subsequent destruction of the hemp. Dkt. 94 at 12. He argues his failure to pay due to his

7    credit card expiring is not "objective intent of denial of ownership or physical

8    relinquishment." Dkt. 105 at 7; Dkt. 94 at 13. He cites the contract provision permitting

9    him to regain possession of the storage unit if he paid before the lien sale, and Alvarez

10   Garman's and Officer Bush's testimony to demonstrate he had a continued possessory

11   interest in the hemp when the police destroyed it. *Id.* at 15–17 (citing *Lavan v. City of Los*

12   *Angeles*, 693 F.3d 1022, 1032 (9th Cir. 2012)).

13        Stewart seeks to strike Tacoma's imitation controlled substance argument on the

14   grounds that Tacoma raises this argument for the first time in its reply brief, Dkt. 100.

15   Dkt. 103. He also responds that because Tacoma stipulated that the property was legal

16   hemp for the purposes of its summary judgment motion and that there is no "scintilla of

17   evidence to suggest Stewart intended to distribute the hemp as 'fake marijuana.'" Dkt. 94

18   at 28; Dkt. 105 at 12–13.

19        As an initial matter, the Court declines to strike Tacoma's imitation controlled

20   substance argument. While it is generally true that the Court does not consider new

21   arguments raised in a reply brief, the Court may consider new arguments if the opposing

22   party has had an opportunity to respond. *Flathead-Lolo-Bitterroot Citizen Task Force v.*

*Montana*, 98 F.4th 1180, 1188 (9th Cir. 2024). Stewart has had ample opportunity to respond and has certainly done so. *See* Dkts. 94, 103, 105, 111. Stewart's motion to strike, Dkt. 103, is DENIED.

> **1.      The Court cannot conclude as a matter of law that Stewart did not have a property interest in the hemp when Tacoma seized it.**

> **a.      The totality of the circumstances does not establish as a matter of law that Stewart abandoned the hemp.**

The first step in analyzing Stewart's Fourth Amendment claims is determining whether Stewart had abandoned the hemp before Tacoma police officers took custody of it.

"'Because warrantless searches or seizures of abandoned property do not violate the Fourth Amendment, persons who voluntarily abandon property lack standing to complain of its search or seizure.'" *United States v. Baker*, 58 F.4th 1109, 1116 (9th Cir. 2023) (citation modified). Abandonment is a factual question of intent. *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986). The Court considers the "totality of the circumstances" to determine whether "through words, acts or other objective indications, a person has relinquished a reasonable expectation of privacy in the property at the time of the search or seizure. *Baker*, 58 F.4th at 1118.

The Ninth Circuit recognizes two primary factors in the abandonment inquiry— "the denial of ownership and the physical relinquishment of the property." *Id.* Denial of ownership must entail an unequivocal disclaiming of ownership, rather than a "mere disavowal of ownership." *United States v. Lopez-Cruz*, 730 F.3d 803, 809 (9th Cir. 2013); *United States v. Decoud*, 456 F.3d 996, 1007 (9th Cir. 2006) (defendant's

1   statement to police officer that a briefcase in the car he was driving did not belong to him,

2   that he did not know how to open it, and that it belonged to the car's owner constituted

3   denial of ownership). *Cf. Baker*, 58 F.4th at 1118–19 (defendant's claim that he did not

4   have a car after police officer removed car key hanging from defendant's belt did not rise

5   to disclaimer of ownership of car key).

6       Physical relinquishment of the property occurs when the claimed owner

7   relinquishes possession or control of the property. *Id. See Nordling*, 804 F.2d at 1470

8   (leaving bag on airplane, where anyone could access it, was an act of relinquishment);

9   *United States v. Mendia*, 731 F.2d 1412, 1414 (9th Cir. 1984) (after giving property away

10  to another individual, with no effort to follow or surveil its transportation, defendant lost

11  control over and relinquished ownership of the property).

12      The totality of the circumstances in this case does not establish that Stewart had

13  abandoned the hemp when Tacoma police officers took control over it. While Stewart's

14  Extra Space contract deemed him to have abandoned the property, there is no claim and

15  no evidence that Tacoma was aware of that provision, and it is only one factor to consider

16  when assessing whether Stewart abandoned the property. Dkt. 41-1 at 6. Viewed in the

17  light most favorable to him, the evidence supports Stewart's claim that his failure to pay

18  after January was inadvertent, because his credit card expired. The contract, Extra

19  Space's lien sale notice, and Alvarez Garman's testimony all suggest Stewart could

20  regain control over the unit and its contents by paying off the balance. Officer Bush

21  testified that Stewart had a right to claim the hemp even after the police department took

22  control over it. Dkt. 95 at 57.

1    The fact that Jennifer Jordan called Extra Space on April 7 and expressed an intent

2    to pay the account balance also supports the conclusion that he did not abandon the hemp,

3    though the fact she did not pay that balance might suggest the opposite. And it does

4    demonstrate that Stewart knew his account was in arrears, even if he denies receiving

5    Extra Space's notices.

6        Although Stewart concedes that Tacoma's search of the storage unit may have

7    been legal, Dkt. 94 at 12, at most that suggests that he agrees the initial entry may have

8    been reasonable. Stewart does not concede he did not have a reasonable expectation of

9    privacy in the hemp when it was then seized. Viewed most favorably to Stewart, the

10    evidence does not evince an unequivocal disclaimer of ownership and physical

11    relinquishment of the hemp. The Court cannot conclude as a matter of law that Stewart

12    abandoned the hemp. Tacoma's summary judgment motion on this basis is DENIED.

13        **b.    Stewart did not lose his possessory interest in the hemp because it was an imitation controlled substance.**

14

15        RCW 69.52.030 prohibits the manufacture, distribution, and possession with intent

     to distribute of an imitation controlled substance. An "imitation controlled substance" is a

16    "substance that is not a controlled substance, but by appearance or representation would

17    lead a reasonable person to believe that the substance is a controlled substance.

18    Appearance includes, but is not limited to, "color, shape, [and] size." RCW 69.52.020(3).

19

20

21

22

1    Cannabis[5] is a controlled substance, whereas hemp with less than 0.3% concentration of

2    delta-9 THC, is not. RCW 69.50.101(15); RCW 69.50.204(c); RCW 15.140.020(7).

3        Imitation controlled substances are subject to "seizure, forfeiture, and disposition

4    in the same manner as are controlled substances." RCW 69.52.040. Controlled substances

5    "manufactured, distributed, dispensed, acquired, or possessed in violation of [chapter

6    69.50] or chapter 69.41 or 69.52 RCW" are subject to seizure and forfeiture and "no

7    property rights exist in them." RCW 69.40.505.

8        While Stewart's hemp was apparently indistinguishable from marijuana based on

9    its appearance and smell, the statute expressly excludes hemp from the definition of

10   controlled substance. RCW 69.50.101(15). Thus, it makes little sense to extend the

11   imitation controlled substance statute to hemp simply because it looks like imitation

12   marijuana. Hemp is not a controlled substance. The Court cannot conclude the imitation

13   controlled substance statute applies here. Tacoma's motion on this basis is DENIED.

14       **2.      Stewart's *Monell* claims fail because there is no evidence a Tacoma
     policy or custom caused his alleged constitutional violations.**

15       To set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff

16   must show that the defendant's employees or agents acted through an official custom,

17   pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil

18   rights; or that the entity ratified the unlawful conduct. *See Monell v. Dep't of Soc. Servs.*,

19   436 U.S. 658, 690–91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646–47 (9th

20

21   _____

22   [5] The Washington legislature replaced the term "marijuana" with "cannabis" in 2022. *See*
     Replacing "Marijuana" with Cannabis," 2022 Wash. Sess. Laws, ch. 16, § 1.

Cir. 1991). Under *Monell*, a plaintiff must allege: (1) that a municipal employee violated

a constitutional right; (2) that the municipality has customs or policies that amount to

deliberate indifference; and (3) that those customs or policies were the "moving force"

behind the constitutional right violation. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397,

403–04 (1997). A municipality is not liable simply because it employs a tortfeasor.

*Monell*, 436 U.S. at 691.

Tacoma argues that it cannot be liable because Stewart cannot establish any

violation of his constitutional rights, and even if he could, there is no evidence that a

municipal custom or policy caused those violations. Dkt. 85 at 12–13. It contends this

single, unusual incident does not demonstrate that Tacoma has a practice of destroying

property it reasonably but wrongly concludes is marijuana with deliberate indifference to

the owner's constitutional rights. *Id.* at 13–14; Dkt. 100 at 6.

Stewart responds that it is evident from the police officers' deposition testimony

that Tacoma does not train its officers to distinguish between marijuana and hemp. Dkt.

94 at 22. He also suggests Tacoma ratified its police officers' unconstitutional destruction

of his hemp without notice to Stewart when City Attorney Yotter concluded there was no

cause of action against Tacoma. *Id.* at 24.

Tacoma asks the Court to strike Stewart's failure to train argument because it is

not alleged in his Third Amended Complaint and raised for the first time in his response

to Tacoma's summary judgment motion. Dkt. 100 at 5–6.

The Court agrees that Stewart's failure to train claim is not raised in his complaint.

His third amended complaint asserts Tacoma engages in the practice of "destroying

material that it believes to be marijuana without affording citizens notice and opportunity

to challenge that determination," and does not allege Tacoma fails to train its officers to

distinguish between hemp and marijuana. Dkt. 114. It is improper to raise new claims in a

response to a summary judgment motion. *Sea Green Partners LLC v. Gail*, No. C20-5142

BHS, 651 F. Supp. 3d 1221, 1226 (W.D. Wash. 2023). *See Wasco Prods., Inc. v.

Southwall Techs., Inc.,* 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary

judgment is not a procedural second chance to flesh out inadequate pleadings.") (internal

quotation marks omitted). Raising a new *claim* in a response is very different from

raising new *arguments* in a reply brief. Tacoma's motion to strike Stewart's failure to

train argument is therefore GRANTED. The Court will analyze Stewart's *Monell* claims

based on his allegation that it is Tacoma's policy to destroy what it believes to marijuana

without due process. Dkt. 114 at 8; Dkt. 94 at 23.

**a.    Stewart presents no evidence that it is Tacoma's policy or custom to destroy suspected marijuana without providing notice to the owner.**

A *Monell* claim requires a longstanding municipal custom or policy so "'persistent

and widespread' that it constitutes a 'permanent and well settled city policy.'" *Trevino v.

Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 691)). Municipal

liability "may not be predicated on isolated and sporadic incidents," but rather "practices

of sufficient duration, frequency and consistency that the conduct has become a

traditional method of carrying out policy." *Id.*

The plaintiff may demonstrate a *de facto* policy or custom by showing that an

authorized policy maker made a "'conscious, affirmative choice'" to ratify a

1    subordinate's unconstitutional decision or action. *Johnson v. Shasta Cnty*, No. 2:14-CV-

2    01338-KJM-EFB, 83 F.Supp.3d 918, 933 (E.D. Cal. 2015) (quoting *Gillette v. Delmore*,

3    979 F.2d 1342, 1347 (9th Cir. 1992)). The policy maker's decision must be a "deliberate

4    choice to follow a course of action . . . from among various alternatives." *Gillette*, 979

5    F.2d at 1347 (internal quotation marks omitted). "[M]ere refusal to overrule a

6    subordinate's completed act does not constitute approval." *Christie v. Iopa*, 176 F.3d

7    1231, 1239 (9th Cir. 1999). Ratification is ordinarily a question for the jury. *Id.* at 1238–

8    39.

9        First, the Court disagrees with Stewart that City Attorney Yotter ratified the police

10   department's actions under *Gillette* and *Christie*. Yotter's internal investigation was not a

11   course of action that signified approval of the destruction of the hemp—to the extent the

12   police department can even be considered the City Attorney's subordinate. No reasonable

13   person could find that Yotter ratified the police department's conduct.

14       Next, Stewart and Tacoma disagree on whether Lieutenant Katz's deposition

15   testimony sufficiently demonstrates that it is Tacoma's practice to destroy suspected

16   marijuana without providing the owner notice and an opportunity to challenge that

17   decision. Dkt. 111 at 8; Dkt. 115 at 4. Katz testified that as per "departmental procedure,"

18   in cases like Stewart's, suspected contraband is reasonably subject to destruction. Dkt.

19   112 at 37; Dkt. 116 at 7.  He stated that he wouldn't say contraband always gets

20   destroyed," and that when property is "potentially illegal to possess, then the owner is a

21   suspect and would be contacted as part of the investigation most likely . . . It changes

22   drastically, though when the property is—if it's conclusively believed to not be illegal,

1    again, it just—it depends on what you have." *Id.* at 7, 28. When asked if it was the

2    Tacoma Police Department's policy to "just not contact the owner of . . . found property,"

3    Katz replied that "the custom is to make a case-by-case assessment," depending on a

4    number of factors, including the "nature of the item, whether or not it's potentially

5    contraband, for example, and . . . how the matter is being handled." *Id.* at 28–29. He

6    stated it was custom to "destroy potential contraband . . . when it's reasonable to do that."

7    *Id.* at 29. Katz's testimony, even viewed most favorably to Stewart, demonstrates at most

8    that it is the Tacoma Police Department's policy to assess suspected contraband on a

9    case-by-case basis. Suspected contraband is destroyed without notice to the owner only

10   when the department deems it "reasonable to do that." Dkt. 116 at 29. A suspected

11   contraband policy that varies based on reasonableness is far from the persistent,

12   longstanding practice of destroying contraband without notice that Stewart alleges. This

13   single incident does not establish any such municipal policy.

14         Except for the defense of qualified immunity, Stewart may have had a valid Fourth

15   Amendment claim against Sergeant Smith for unreasonable destruction of the hemp, but

16   Tacoma, and not Smith, is the defendant in this case. Absent proof of a municipal policy

17   or custom that was the driving force behind his alleged constitutional violations, Stewart

18   cannot succeed on his § 1983 *Monell* claims against Tacoma.

19         **b.    Stewart's due process claim against Tacoma fails on its face because he
received notice of Tacoma's intent to destroy the hemp.**

20

21         Even if Stewart could establish Tacoma had a policy of destroying suspected

22   contraband without notice, Stewart's due process claim fails as a matter of undisputed

1    fact. His third amended complaint alleges Tacoma destroyed what it suspected to be

2    marijuana "immediately following its seizure . . . without affording [him] notice and

3    opportunity to challenge that determination." Dkt. 114 at 8–9.

4         Jordan's declaration, which Stewart offers in support of his claim and does not

5    dispute, indicates Stewart told her on April 14 that Tacoma had seized the hemp from the

6    storage unit. Dkt. 29-2 at 2. Stewart evidently had actual notice of the seizure the day it

7    happened. Jordan's declaration indicates she called the police on April 20 to explain that

8    the property was hemp, and concedes the officer told her it was going to be destroyed.

9    She then informed Stewart of this conversation with the officer. Stewart had notice of

10   that fact, as a matter of law.

11        Stewart's own expert emphasizes the hemp was destroyed "more than 60 days

12   later," vitiating Stewart's claim that Tacoma destroyed the hemp "immediately following

13   its seizure" and thus deprived Stewart of the opportunity to clarify that the property was

14   hemp rather than marijuana. Dkt. 114 at 8; Dkt. 95 at 154. Aside from a single assertion

15   in one of many responses, Dkt. 111 at 4, in which Stewart claims Tacoma acted in

16   "reckless disregard" for his constitutional rights by destroying the hemp despite Jordan's

17   call, Stewart does not acknowledge or dispute the fact that he himself *contacted* Tacoma

18   between the seizure and destruction. This is ample, undisputed evidence that Stewart had

19   actual notice of Tacoma's intent to destroy the hemp. His barebones due process claim

20   against Tacoma fails.

21        Tacoma's motion for summary judgment on the two § 1983 *Monell* claims is

22   GRANTED. Those claims are DISMISSED with prejudice.

**B.    Stewart's conversion claim fails because Tacoma had lawful justification to interfere with his possession of the hemp.**

Conversion occurs when one willfully interferes with chattel without lawful justification, depriving another's right to the chattel. *Brown ex rel. Richards v. Brown*, 157 Wn. App. 803, 817 (2010).

Chapter 16-306 WAC establishes a "hemp program" that requires licenses for "persons to produce hemp," but leaves registration "voluntary for hemp processors that process hemp for commercial use or sale." WAC 16-306-010. A "hemp processor" is someone who takes possession of raw hemp material with the intent to modify, package, or sell a transitional or finished hemp product." WAC 16-306-360. The possession of "legally obtained hemp and hemp products" falls outside the scope of the hemp program. WAC 16-306-020.

WAC 16-306-130, "Transporting hemp," provides that "[a]ny hemp from a licensed Washington producer that is found in Washington state at any location off the premises of a registered land area of a licensee without department-issued THC certification . . . is deemed to be contraband. WAC 16-306-130(2). The contraband hemp is subject to seizure and destruction by law enforcement. *Id.*

Tacoma argues that Stewart's conversion claim fails because the hemp was contraband, and it had lawful justification to destroy it under WAC 16-360-130. Dkt. 85 at 14. It also returns to its abandonment argument to separately present a "defense to an action for conversion." *Id.* at 16.

1    Stewart argues that WAC 16-360-130 doesn't apply because he was a processor,

2 not a producer, of the hemp when Tacoma seized it from the storage unit. Dkt. 94 at 24–

3 25. He relies on Ehrlich's deposition testimony for the proposition that "[o]nce a

4 producer's license expires, they are allowed to store it anywhere they want . . . without

5 having the producer's THC certification." Dkt. 111 at 24.

6    The plain language of WAC 16-306-130(2) requires "hemp from a licensed

7 Washington producer" to be accompanied by the WSDA THC certification. Although the

8 section is titled "Transporting hemp," the Court need not consider the heading because

9 the plain meaning of WAC 16-306-130(2) is unambiguous. *Certification from United*

10 *States Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 43 (Wash.

11 2025) (if the statute is unambiguous after review of its plain meaning, the court's inquiry

12 stops there); *Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 528–

13 29 (heading of statute cannot limit the plain meaning of the text). *See Alstom Power, Inc.*

14 *v. Dep't of Revenue*, 26 Wn. App. 2d 36, 45 (2023) ("The rules of statutory interpretation

15 equally apply to interpretation of agency rules and regulations.").

16    Stewart does not dispute he produced the hemp in the storage unit; the hemp was

17 therefore "from a licensed Washington provider." WAC 16-306-130(2). Extra Space

18 employees did not see any documents in the unit and Stewart concedes he did not post

19 any of his hemp license and certificate documents there. The storage unit was not a land

20 area registered to Stewart's hemp license. As for the argument that Stewart merely

21 "possess[ed] . . . legally obtained hemp" as a producer turned processor and was therefore

22 not subject to WAC 16-360-130, he provides no support for this dubious legal argument

other than Ehrlich's deposition testimony. WAC 16-360-020(1); Dkt. 111 at 22–23.

Tacoma persuasively points out that Ehrlich was not designated as a 30(b)(6) deponent by

the WSDA. Moreover, Ehrlich provides no statutory or regulatory authority for her

contention that "there's no oversight of producers who are no longer licensed." Dkt. 112

at 109. It makes no sense to conclude that a producer becomes a processor, and thus

escapes WSDA regulatory control, simply because their license expires.

Because Stewart's THC certification was not in the storage unit with the hemp,

Tacoma law enforcement had regulatory authority under WAC 16-360-130(2) to seize

and destroy the contraband hemp.

Tacoma's interference with Stewart's hemp was lawfully justified, and its motion

for summary judgment on his conversion claim is GRANTED. That claim is

DISMISSED with prejudice.

**C.    Stewart's negligence claim fails because he does not establish that Tacoma owed him a duty.**

"In an action for negligence a plaintiff must prove four basic elements: (1)

the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate

cause." *Ranger Ins. Co. v. Pierce Cnty*, 164 Wn.2d 545, 552 (2008).

Tacoma argues law enforcement did not have a cognizable duty here because it

reasonably believed the hemp was contraband. Dkt. 85 at 17. Stewart responds that

Tacoma has stipulated that the unit contained hemp for purposes of its summary

judgment motion, and claims Tacoma breached a statutory duty to keep found property

for 60 days and attempt to notify the owner. Dkt. 94 at 27, 29.

As the Court concluded above, WAC 16-306-130 authorized the Tacoma Police Department to seize and destroy the contraband hemp. Any statutory duty Tacoma owed Stewart to keep the property was therefore vitiated. Even viewed in the light most favorable to Stewart, the evidence does not establish that Tacoma owed him any duty. Tacoma's motion for summary judgment on Stewart's negligence claim is GRANTED, and that claim is DISMISSED with prejudice.

### III.  ORDER

Tacoma's summary judgment motion, Dkt. 85, is **GRANTED**. Stewart's *Monell*, conversion, and negligence claims against Tacoma are **DISMISSED with prejudice**. The clerk shall enter a judgment and close the case.

Dated this 13th day of June, 2025.

BENJAMIN H. SETTLE
United States District Judge